BARNES and others *v.* HARTFORD FIRE INS. Co.

*(Circuit Court, D. Minnesota.* January, 1882.)

1. INSURANCE — SEPARATE RISKS UPON SAME PROPERTY — LAWS — MEASURE OF LIABILITY.

Where several insurance companies take separate risks upon the same property, and a loss occurs, the companies are liable in the ratio that their risks bear respectively to the total risk.

Action at law, tried before the court without a jury upon an agreed statement of facts.

*W. D. Cornish,* for plaintiffs.

*C. K. Davis,* for defendant.

NELSON, D. J. This suit is brought against the defendant upon an insurance policy, dated February 22, 1881, by the terms of which it insured the plaintiffs, as their interest might appear, against loss or damage by fire "to the amount of $20,000 upon grain held by them in storage, or in trust, or on commission, or sold but not delivered, contained in elevators and warehouses situate on the lines of the Northern Pacific and St. Paul, Minneapolis & Manitoba Railroads, as per schedule herewith, as the same may be owned, controlled, or leased by the said assured."

The schedule referred to, and which was attached and made a part of the policy of insurance, was in words and figures as follows:

"On grain owned or held by them in storage, or in trust, or on commission, or sold but not delivered, contained in elevators, warehouses, situate on the lines of the Northern Pacific and St. Paul, Minneapolis & Manitoba Railroads, as per schedule herewith, as the same may be owned, controlled, or leased by the said assured.

"It is understood and agreed that, in case of loss under this policy, this company shall be liable only for such proportion of the whole loss as the amount of this insurance bears to the cash value of the whole property herein described and contained in the elevators and warehouses, in schedule herewith, at the time of the fire.

"Permission to clean grain, and to make ordinary alterations and repairs in and to any of the buildings named in this schedule, and to run at night when necessary. Other insurance permitted, without notice, until required.

"SCHEDULE OF ELEVATORS AND WAREHOUSES.

| Stations. | Kind of building. | Capacity in bushels. | Exposures. Detached feet. |
|---|---|---|---|
| Jamestown | Frame steam-power elevator | 50,000 | 60 |
| Spiritwood | Frame warehouse | 15,000 | 100 |
| Sanborn | Frame warehouse | 10,000 | 100 |
| Valley City | Frame warehouse | 10,000 | 100 |
| Valley City | Frame steam-power elevator | 60,000 | 300 |
| Tower City | Frame warehouse | 12,000 | 100 |
| New Buffalo | Frame warehouse | 5,000 | 100 |
| Wheatland | Frame steam-power elevator | 50,000 | 100 |
| Casselton | Frame steam-power elevator | 50,000 | 60 |
| Casselton | Frame warehouse, (adjoining,) | 20,000 | 80 |
| Mapleton | Frame steam-power elevator | 50,000 | 100 |
| Mapleton | Frame warehouse, (adjoining,) | 10,000 | 50 |
| Fargo | Frame warehouse | 15,000 | 100 |
| Fargo | Frame steam-power elevator | 120,000 | 100 |
| Glyndon | Frame steam-power elevator | 60,000 | 100 |
| Hawley | Frame warehouse | 25,000 | 100 |
| Lake Park | Frame warehouse | 25,000 | 100 |
| Audubon | Frame warehouse | 15,000 | 100 |
| Detroit | Frame warehouse, large | 15,000 | 100 |
| Detroit | Frame warehouse, small | 5,000 | 100 |
| Perham | Frame warehouse | 15,000 | 100 |
| Perham | Frame H. P. elevator "Wallace" | 20,000 | 100 |
| Bluffton | Frame warehouse | 5,000 | 100 |
| Wadena | Frame warehouse, large | 25,000 | 100 |
| Wadena | Frame warehouse, small | 5,000 | 100 |
| Verndale | Frame warehouse | 10,000 | 100 |
| Aldrich | Frame warehouse | 10,000 | 100 |
| Motley | Frame warehouse | 15,000 | 100 |
| Belle Prairie | Frame warehouse | 10,000 | 100 |
| Little Falls | Frame warehouse, "J. C. Flynn & Co." | 20,000 | 100 |
| Royalton | Frame warehouse | 10,000 | 100 |
| Sauk Rapids | Frame warehouse | 10,000 | 100 |
| Blanchard | Frame warehouse | 12,000 | 100 |

"It is stipulated that this insurance is limited in each building to amounts named in this schedule, under head of "Capacity in bushels," and this company, in the event of a loss, shall not be liable to contribute over one-tenth of the amount of all the insurance upon property described above.

"Loss, if any, payable to David Dows & Co., as interest may appear.

"This slip being attached to and becomes a part of Policy No...... ......
...... ...... ...... ...... ...... of...... ...... ......  Agent."

To meet the demand of the grain business conducted by dealers owning and controlling numerous elevators, at which they purchase and from which they ship and distribute large quantities of grain, continually changing and shifting in the location and in the amount

of property to be protected, the insurance companies have adopted this form of policy, by which each company, while insuring a gross sum upon all grain in the elevators in its schedule, yet limits its liability in each elevator as certainly as though the amount allotted each were set opposite its name in the schedule.

It appears that on March 13, 1881, while the policy was in full force, the elevator at Mapleton was destroyed by fire, and the net loss on grain belonging to plaintiffs was $12,986.18.

At the time this policy was procured the same agent insured the plaintiffs in other companies upon the property described in defendant's policy, and concurrent therewith, to the amount of $20,000, which additional insurance was in force at the time of the loss; and at that time the plaintiffs also had insurance against loss or damage by fire to the amount of $330,000 upon the grain contained in two elevators at Duluth, and the elevators and warehouses described in defendant's policy.

All the policies were written by filling out and inserting, in the company's ordinary policy, a printed blank slip or schedule, as above set forth, with the addition:

"Duluth steam-power elevator A; capacity, 100,000 bushels; detached."
"Duluth steam-power Lake Superior elevator; capacity, 100,000 bushels; detached."

The defendant's policy and two others for $20,000, making, with defendant's risk, $40,000, excepted, as appears in schedules, the elevators at Duluth.

Policies in other companies to the amount of $330,000 covered the elevators in Duluth as well as those outside.

There was contained in the elevators at Duluth, at the time of the fire, plaintiffs' grain of the cash value of $168,107.28, and in the elevators and warehouses mentioned in defendant's policy of the cash value of $189,220.22.

The amount of defendant's liability is the only question at issue in the view taken by the court. To arrive at this it is necessary to ascertain what proportion of the $330,000 insurance upon the grain, both in and outside of Duluth, was applicable to pay the loss at the date it occurred. The aggregate value of the grain at the time of the fire was $357,327.50; of that outside of Duluth $189,220.20; so that there would be 189,220.22-356,327.50 part of the $330,000 insurance which could be applied at the time to loss outside of Duluth,—that is, $174,749. If to this is added the $40,000 taken by

the defendant and other companies upon grain outside of Duluth, it will give $214,749—the total amount of insurance which must pay the loss. The proportion which defendant and the other companies having $20,000 like insurance must bear is 40,000-214,749 of $12,-986.18, equal to $2,418.88, and the defendant company one-half of this sum, which is $1,209.44.

Judgment will be entered for this amount, with interest and costs.